UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN W. GARNER and MARSHA GARNER, *Plaintiffs*, | ) ) ) | |
| vs. | ) ) | 2:09-cv-0136-JMS-WGH |
| P.J. TRUCKING, INC., P.J. DAVENPORT, and KATHERINE DAVENPORT, *Defendants*.[1] | ) ) ) ) | |

## **ORDER**

Presently before the Court in this employment-law action is Defendants' motion for partial summary judgment. [Dkt. 42.][2] Defendants seek summary judgment only against Plaintiffs' federal claims, which were all brought under Title VII of the Civil Rights Act of 1964, *codified as amended at* 42 U.S.C. §§ 2000e *to* 2000e-17.

### I.
#### SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue

---

[1] The Amended Complaint, and hence the official caption, lists "Katherine Davenport" as one of the individual Defendants. But the captions on the parties' briefs, as well as the briefs themselves, call her "Catherine Davenport." The Court has used "Catherine" in the body of this Order. If any party wishes to correct the caption, that party must file a motion.

[2] Although all three Defendants in this action have moved for summary judgment on Plaintiffs' federal claims, Plaintiffs have only asserted those claims against Defendant P.J. Trucking, Inc. ("P.J. Trucking"). [*See* dkt. 30 at 6-13.] Plaintiffs have, however, raised several state-law claims against the two individual Defendants. [*Id.*]

for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 323. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### BACKGROUND

Plaintiffs John W. Garner and Marsha Garner, who are married, both used to work for P.J. Trucking, a company the Garners say is co-owned by Defendants P.J. Davenport and Catherine Davenport. [Dkt. 30 at 1-3; dkt. 35 at 1-2.] Mrs. Garner claims to have been wrongly fired in October 2008, after reporting a sexual battery by one of her co-workers. [*See* dkt. 30 at 1-3; dkt. 64-2 at 1.] Mr. Garner claims to have been fired in February 2009, in retaliation for reporting the sexual battery against his wife. [Dkt. 30 at 2-3; dkt. 64-1 at 2.] Those firings, they say, violate Title VII, as does the allegedly hostile work environment that Mrs. Garner had to endure.

Through its motion for summary judgment, P.J. Trucking argues that no trial on the Title VII claims is needed because P.J. Trucking didn't have enough employees for each relevant year to be subject to Title VII's requirements at all. As explained later, the key year in that regard is 2008, and the key question is whether, during that year, P.J. Trucking had at least fifteen employees on each working day during at least twenty weeks.

By P.J. Trucking's count, there were only four weeks where it had the required number of employees during 2008:

- August 17-23;

- August 24-30;

- August 31 – September 6; and

- September 7-13.

[*See* dkt. 44-1 at 5; dkt. 56-4 at 9-10.]

P.J. Trucking didn't include Catherine Davenport, its president, in its count of employees after March 1, 2008. [*See* dkt. 56-4.] The same is true for Heather Davenport, P.J. and Catherine Davenport's daughter. [*See id.*] Had P.J. Trucking continued to count them after March 1, it would have had fifteen or more employees during twenty more weeks of 2008:

- April 13 – July 12 (i.e. 13 weeks)

- July 20 – August 2 (i.e. 2 weeks)

- September 14 – October 18 (i.e. 5 weeks)

[*See* dkt. 56-4.]

P.J. Trucking stopped counting Catherine Davenport because she stopped receiving a salary from the company and instead began to "volunteer" her time after March 1. [Dkt. 44-1 ¶2; dkt. 67 at 9.][3] In consultation with her husband, P.J. Davenport, she decided to shift her salary to him so that he could maximize his Social Security contributions as he nears retirement. [Dkt. 85-1 at 7.] Thus, whereas Mr. and Mrs. Davenport had each been receiving $700 per week before March 1, Mr. Davenport began receiving $1,400 per week and Mrs. Davenport nothing. [*Id.*][4]

---

[3] During the relevant period, P.J. Trucking didn't provide health benefits to any of its employees. [Dkt. 85-1 at 9.] Mrs. Davenport received benefits from Sullivan County Community Hospital, where she is a full-time employee. [Dkt. 67-1 ¶4.]

[4] Mr. Davenport also gave himself a raise at some point after March 1, 2008. [*Id.*]

As for Heather Davenport, P.J. Trucking doesn't specifically explain why it stopped counting her as an employee after March 1. She did, however, work only very little after that time. P.J. Trucking's payroll records show that she only earned $42 for the week beginning September 28, $4.02 for the week beginning November 16, and $10.32 for the week beginning December 21, 2008. [Dkt. 57-1 at 41, 48, 53.]

P.J. Trucking's present position about Heather Davenport's employment status differs from the one it took on a chart it provided to the Garners during discovery. Consistent with the payroll records described above, P.J. Trucking counted Heather Davenport as an employee for Title VII purposes during the weeks beginning September 28, November 16, and December 21, 2008 on the chart it provided to the Garners. [*See* dkt. 64-4 at 2.]

## III.
### DISCUSSION

In passing Title VII, Congress decided to outlaw sex discrimination in the workplace. But "to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail," Congress decided to exempt them from Title VII. *Papa v. Katy Indus.*, 166 F.3d 937, 940 (7th Cir. 1999) (citation omitted). Accordingly, Title VII only covers employers that had "fifteen or more employees for each working day in each of twenty or more calendar weeks" either in the year that the discrimination occurred or in the year before it occurred. 42 U.S.C. § 2000e(b).

The Supreme Court has directed trial courts to use the "payroll method" to decide which weeks an employee counts toward the Title VII minimum. *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 207 (1997). Under that method, employees count toward the minimum once they are first placed on the company's payroll until they are removed from it—regardless of whether they

actually work on any given day. *Id.* at 211 ("[A]ll one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure."). So, for example, even though an employee may only work on the first day of a month, the employee counts for Title VII purposes for the entire month so long as the employee didn't resign, get fired, or laid off during the month. *See id.* at 210 ("For example, an employee who works irregular hours, perhaps only a few days a month, will be counted toward the 15-employee minimum for every week in the month.").

Here, the parties agree that P.J. Trucking's motion for summary judgment will fail if material issues of fact exist as to whether P.J. Trucking had at least fifteen employees during each working day during twenty or more calendar weeks during 2008. [*See* dkt. 64 at 12-13; dkt. 67 at 1.] That was the year that Mrs. Garner claims that P.J. Trucking violated Title VII as to her, and it was the year before Mr. Garner claims that P.J. Trucking violated Title VII as to him.

While the parties argue at length whether several different people qualified as employees during 2008, the Court will only address the employment status of two people: Catherine and Heather Davenport.[5] The employment status of the other potential Title VII employees doesn't ultimately matter for the present motion for summary judgment, so the Court makes no ruling with respect to the status of the other potential employees. As indicated above, P.J. Trucking will have had at least fifteen employees for every working day during twenty-four weeks—in

---

[5] The parties also dispute whether P.J. Trucking's motion for summary judgment complies with Local Rule 56.1. That dispute is moot given the issues of fact that preclude summary judgment. Also, although the Garners' brief includes an off-hand request for summary judgment, [*see* dkt. 64 at 18], the Court will not consider that request because it violates Local Rule 7.1(a), which prohibits "new motion[s]…[from being] incorporated within a brief, response, or reply to a previously filed motion." L.R. 7.1(a). Considering such a request here might unfairly deprive P.J. Trucking of the opportunity to present evidence that wasn't relevant to its own motion for summary judgment.

other words, more than enough to trigger Title VII—if both Catherine and Heather Davenport counted as employees from January 1, 2008 through October 18, 2008. And the Garners have demonstrated that genuine issues of material fact in that regard exist, and those issues must be resolved at trial.

### A. Catherine Davenport

No one disputes that Catherine Davenport physically worked at P.J. Trucking for all of 2008. [*See* dkt. 85-1 at 2.] Nor does anyone dispute that she counted as a Title VII employee until March 1, 2008. [*See* dkt. 56-4 at 2-3.] The only issue concerns whether Mrs. Davenport continued to count as an employee once P.J. Trucking stopped paying her a salary on March 2.

A split of authority—one not addressed by the Seventh Circuit—exists as to when a person who doesn't receive a salary counts as an employee under Title VII. *See Holder v. Town of Bristol*, 2009 U.S. Dist. LEXIS 85878 (N.D. Ind. 2009) (collecting cases). P.J. Trucking asks this Court to join those holding that "remuneration in exchange for services is an essential condition to the existence of an employer-employee relationship," *id.* at *7 (collecting cases), and thus stop counting Mrs. Davenport as an employee once she stopped drawing a salary and became a "volunteer."

This motion for summary judgment doesn't, however, present the proper opportunity to consider that split of authority for several reasons, each of which precludes summary judgment. First, because P.J. Trucking admits that Mrs. Davenport was once an actual employee during 2008, and because no evidence suggests that she ever resigned, quit, or was fired from her position, [*see* dkt. 85-1 at 8], the evidence here doesn't permit Mrs. Davenport to stop counting as an employee under the payroll method. She remains ready, willing, and able to accept any financial benefit that P.J. Trucking might provide her for her work. The break between her last paycheck

and her next one is, therefore, just as insignificant as one for an employee who worked on March 2 but wasn't scheduled to work again until April 2. That employee would continue to count for the entire intervening period, even though the employee never earned any wages. *See Walters*, 519 U.S. at 210.

Second, whether or not the Seventh Circuit would exempt volunteers from the Title VII minimum, the evidence doesn't establish that Mrs. Davenport has ever "volunteered" at P.J. Trucking. As *Holder* notes, compensation can come in a variety of forms, both "direct or indirect." 2009 U.S. Dist. LEXIS 85878 at *8. Giving the Garners the benefit of the inferences, as the Court must do here, the trier of fact might conclude that P.J. Trucking is paying Mrs. Davenport indirectly, by diverting her salary to her husband. *See Lucas v. Earl*, 281 U.S. 111, 115 (1930) (rejecting the suggestion that somehow "fruits are attribut[able] to a different tree from that on which they grew" and holding that a husband had to report 100% of his salary as his own income for tax purposes, even though he and his wife had agreed that 50% would belong to her).

Finally, even assuming both that Mrs. Davenport did, in fact, volunteer her services at P.J. Trucking and that the Seventh Circuit wouldn't normally count as an employee one who didn't receive any salary, the Garners have persuasively argued that Mrs. Davenport should still count here: P.J. Trucking was obligated to pay her the legal minimum wage, whether she wanted to "volunteer" or not. *See* 29 U.S.C. § 206(a) (establishing federal minimum wage); Ind. Code § 22-2-2-4(a) (establishing state minimum wage). No evidence in the present record brings Mrs. Davenport within any exemption to the statutory minimum wage. For example, there's no evidence that Mrs. Davenport has at least a "bona fide 20-percent equity interest" in the company; she may have less (or more) of a stake in the company. 29 C.F.R. § 541.101. The Court must "construe Title VII liberally so as to further the goals and purposes of eliminating discrimination

in employment." *Alexander v. Rush N. Shore Medical Ctr.*, 101 F.3d 487, 491 (7th Cir. 1996) (quotation omitted). Permitting an employer to evade Title VII's requirements by not paying a legally mandated wage would be impermissibly inconsistent with Title VII's purposes. Accordingly, if the evidence at trial establishes that P.J. Trucking wrongly failed to pay Mrs. Davenport any legally required minimum wage, the Court will still treat her as an employee for Title VII purposes. *Cf. In re Lefkas Gen. Partners*, 112 F.3d 896, 901 (7th Cir. 1997) (noting as a "basic equitable tenet that equity regards as done that which ought to be done" (citation omitted)).

Genuine issues of material fact therefore remain as to whether Mrs. Davenport qualified as an employee for Title VII purposes after March 1, 2008.

### B. Heather Davenport

Despite an affidavit from Catherine Davenport that Heather Davenport was only employed "from the first of the year until March 1, 2008," [dkt. 44-1 at 6], a factual dispute exists as to when—if at all—Heather Davenport ever terminated her employment relationship during 2008. Payroll records for her show at least some earnings in late September or early October, in November, and in December 2008. Further, P.J. Trucking's chart provided during discovery stated that she was an employee during the three weeks she was paid in those months.[6] P.J. Trucking has presented no evidence or argument that Heather Davenport resigned or was otherwise terminated in March, only to later regain and promptly lose her employment in connection with each brief stint of work in September, November, and December. Thus, assuming the

---

[6] While P.J. Trucking asks the Court to discount the weight of that chart as "preliminary," "outdated," and "unsworn," [dkt. 67 at 7-8], it has explicitly disclaimed any evidentiary objection to the admissibility of the chart on summary judgment, [dkt. 86-1 at 3]. Because the weight of evidence must be assessed at trial—not on summary judgment—P.J. Trucking's argument about the weight of the chart is misplaced. And in any event, the credibility of P.J. Trucking's explanations as to the later revisions to the chart will be for the jury to assess.

Garners' evidence is believed at trial, the Garners can establish that Heather Davenport counted toward the fifteen-employee minimum for all of 2008, even though she didn't work any hours from March 1 until her brief work in September or October, in November, and in December. *See Walters*, 519 U.S. at 210.

## IV.
### CONCLUSION

Accordingly, P.J. Trucking's motion for partial summary judgment, [dkt. 42], is **DENIED**.

12/02/2010

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

William S. Frankel IV
WILKINSON, GOELLER, MODESITT, WILKINSON & DRUMMY
wsfrankel@wilkinsonlaw.com

Robert Peter Kondras Jr.
HUNT HASSLER & LORENZ LLP
kondras@huntlawfirm.net

Craig Morris McKee
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
cmmckee@wilkinsonlaw.com

Holly A Reedy
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
hareedy@wilkinsonlaw.com